**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **EARLY WARNING SERVICES, LLC** | **:** | **CIVIL ACTION** |
| | **:** | |
| **v.** | **:** | **NO.  21-1050** |
| | **:** | |
| **WILLIAM GRECIA** | **:** | |

## <u>MEMORANDUM</u>

**KEARNEY, J.**                                                                                    **April 6, 2021**

After weeks of threatening a software designer he would sue four of its customers for infringing his patent unless the software designer could "buy out" his claims for an "early discounted amount," a Pennsylvania patent holder sued a bank customer of the software designer in Texas for allegedly infringing one claim of his patent relating to software used by the bank. The bank customer hired counsel, opened settlement discussions, and negotiated an extension of time to respond to the complaint in Texas. A few weeks later, the software designer agreed to indemnify its bank customer but there is no evidence the designer hired the bank's lawyers or controls the bank's defense. Two weeks after agreeing to indemnify its bank customer, the software designer sued the patent owner here asking we declare its software does not infringe the patent or the patent at issue is otherwise invalid. While the Texas suit is first filed and we may stay or dismiss in deference if it involves the same patents at issue involving the same product, the Texas district court is not a proper venue to sue the software designer under patent venue rules and we prefer addressing the designer's broader invalidity claims under the customer suit exception to the first-filed rule in patent cases. The software designer's declaratory judgment suit before us is also not a compulsory counterclaim in the first-filed Texas case as the patent holder offers no basis to find

the designer so controls the bank customer sued in Texas so as to be functionally equivalent to the bank (like an insurer might on a subrogation claim). We deny the patent holder's motion to dismiss.

## I.    Alleged facts

Pennsylvanian William Grecia owns United States Patent 8,404,555 ("'555 patent"), titled "Personalized digital media access system (PDMAS)."[1] The '555 patent relates to the field of digital access management schemes used by makers of electronic products to protect sensitive data from illegal access using computerized devices.[2] Mr. Grecia claims his patent "teaches a more personal system of access rights management which employs electronic ID, as part of a web service membership, to manage access rights across a plurality of devices."[3] He also owns United States Patent Numbers 8,533,860 ("'860 patent") and 8,887,308 ("'308 patent"), which share substantially identical specifications and relate to the same subject matter.[4]

Mr. Grecia regularly sues to enforce his patent rights against third parties through licenses or litigation involving his patent portfolio, including the '555 patent.[5] He filed over fifty patent infringement suits against corporate defendants including Google Inc., Apple Inc., Sony Network Entertainment International, LLC, Samsung Electronics America, Inc., Microsoft Corp., and Amazon.com, Inc.[6] Other corporate targets of Mr. Grecia's frequent patent infringement suits include The Bank of New York Mellon Corporation, Citibank, N.A., Morgan Stanley Smith Barney, LLC, and TIAA, FSB d/b/a/ TIAA Bank.[7] The United States District Court for the Southern District of New York invalidated the '308 patent when he sued these four financial institutions, and he chose to not appeal.[8] Courts or the United States Patent and Trademark Office invalidated or cancelled all of the claims of the '860 patent, the other patent related to his '555 patent.[9]

Mr. Grecia then turned to enforce his claims under the '555 patent. He sent a "demand" letter to software designer Early Warning Services, LLC's counsel in December 2020 claiming enforceable rights under the '555 patent.[10] Early Warning owns the Zelle® network, a financial services network "focused on transforming digital payment experiences."[11] Its customers in the financial industry participate in the Zelle® network which provides financial payment services to their respective customers.[12]

Mr. Grecia's December 2020 demand to Early Warning specifically accused its customers First National Bank of Central Texas, Frost Bank, American Bank, and First National Bank of Texas of infringing his patent.[13] Mr. Grecia demanded Early Warning "move wisely" to "buy out" these cases for an "early discounted amount" before he filed cases against the four customers after January 5, 2021.[14] He also threatened to demand large sums of money after filing suits in the Western District of Texas.[15] Mr. Grecia attached four claim charts purporting to identify the customers' alleged infringement of at least claim 2 of the '555 patent.[16] He threatened further enforcement efforts and would "not consider any bulk or global" deals concerning the Zelle® network "at all in 2021."[17]

### Mr. Grecia sues Frost Bank.

Early Warning does not appear to have immediately responded to Mr. Grecia's December 2020 demands. So Mr. Grecia sued Frost Bankers, Inc. in the United States District Court for the Western District of Texas (the "Frost Bank suit") a week into 2021. He alleges Frost Bank infringes claim 16 of the '555 patent through its use of the Zelle® computer product.[18] Mr. Grecia alleges Frost Bank offers its customers—individuals and businesses holding accounts with Frost Bank— a way to make and receive payments digitally.[19] He claims this digital payment system is the Zelle® computer program product which, as part of the Zelle® network, includes code facilitating

the monitoring access to the Frost Bank account holder's money.[20] Frost Bank's alleged infringing uses of the Zelle® computer product include its capability of "receiving an access request in the form of an email or mobile telephone number through the Frost Bank communications console" "establishing an API communication related to the ZELLE RESTful API," and "writing the Frost Bank account holder's email or phone number and the Zelle CSCToken to the Zelle Computer product metadata."[21]

Mr. Grecia does not specifically allege infringement by Early Warning but does claim its Zelle® network infringes the '555 patent.[22] He attaches a claim chart as an exhibit to his Frost Bank suit complaint including a description of the allegedly infringing product, the Zelle® computer product.[23] The claim chart also identifies Early Warning as the maker and seller of the Zelle® network royalty scheme.[24]

Mr. Grecia alleges Early Warning agreed to defend and indemnify Frost Bank in the Frost Bank suit.[25] He bases his conclusion on his confusion in the name of Frost Bank's counsel (Baker Botts) with Early Warning's counsel (Baker Hostetler); each is a large law firm but they are not the same or related law firms. In response to Mr. Grecia's Motion, Early Warning submitted the declaration of its in-house counsel Warren Johnson.[26] Attorney Johnson swears he learned of Mr. Grecia's December 23, 2020 demand letter shortly after Early Warning received it; Early Warning did not engage in settlement discussions with Mr. Grecia; Attorney Johnson retained outside counsel on behalf of Early Warning in connection with Mr. Grecia's allegations of patent infringement but did ***not*** retain the Baker Botts law firm representing Frost Bank in the Texas suit.[27]

Attorney Johnson further swears the Baker Botts firm is Frost Bank's separate counsel.[28] Attorney Johnson attests Early Warning's offer to defend and indemnify Frost Bank in the Texas

action did not begin until Frost Bank requested indemnity on February 10, 2021 and Early Warning did not agree to do so until February 22, 2021.[29]

Mr. Grecia contends he had communications with Frost Bank's counsel at the Baker Botts firm in January 2021, but Attorney Johnson swears neither Early Warning nor its counsel were involved in any way with those communications.[30] Mr. Grecia offers no counter to Early Warning's sworn representations of no involvement in retaining Frost Bank's counsel or in negotiating with him in the Texas suit.

***Frost Bank's counsel negotiates an extension to respond in Texas.***

Mr. Grecia claims on January 19, 2021, Early Warning's counsel, as Frost Bank's indemnitor, met and conferred with him in the Frost Bank Texas action "to open settlement negotiations and to establish an unopposed agreement to a forty-five (45) day extension for [Early Warning] to answer" the complaint in Frost Bank.[31] This unsworn averment is directly contradicted by Attorney Johnson's declaration Early Warning did not agree to indemnify Frost Bank until February 22, 2021 and did not retain Baker Botts to defend Frost Bank. Mr. Grecia is apparently again confusing the names of counsel for Frost Bank and Early Warning as both begin with Baker. Judge Albright granted Frost Bank's and Mr. Grecia's request for extension on January 20, 2021 setting an answer date of March 22, 2021.[32]

Early Warning, represented by a different law firm (Baker & Hostetler LLP), sued Mr. Grecia here in his home District on March 4, 2021.[33] Early Warning alleges Mr. Grecia created an actual case or controversy "by threatening actual and imminent injury to [Early Warning] that can be redressed by judicial relief and that injury is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."[34] It asks us to declare the '555 patent is invalid, the claims of

the '555 patent are unenforceable, and Early Warning and its customers, including Frost Bank, do not infringe on the '555 patent through the use of the Zelle® network.[35]

## II.    Analysis

Early Warning asks us to declare: (1) the '555 patent is invalid under 35 U.S.C. §§ 101, 102, 103, and 112; (2) the claims of the '555 patent are unenforceable due to fraud in the United States Patent Office; and (3) Early Warning and its customers do not infringe a valid and enforceable claim of the '555 patent.[36]

Mr. Grecia moves to dismiss Early Warning's claim, or, in the alternative, transfer or stay this case to the Western District of Texas under the first-to-file rule because this case and the Frost Bank suit involve the same patent, the same allegedly infringing product, and Early Warning is defending and indemnifying Frost Bank in the Frost Bank suit.[37] Mr. Grecia argues dismissal, rather than transfer of venue or  staying the action, is appropriate because it promotes judicial economy and avoids the "significant risk of conflicting or inconsistent judgments."[38] Mr. Grecia also argues Early Warning's claims here are barred by Federal Rule of Civil Procedure 13(a), the compulsory counterclaim rule, which requires a pleading to "state as a counterclaim any claim that—at the time of its service—the pleader has against an opposing party."[39]

### A.    The first-to-file rule may allow us to transfer but the customer suit exception bars transfer to the first-filed District.

Mr. Grecia argues we should dismiss because his January 8, 2021 complaint against Frost Bank in the Western District of Texas is the first-filed action ahead of Early Warning's March 4, 2021 declaratory judgment action here. Mr. Grecia argues it would not be unjust or inefficient to continue Early Warning's declaratory judgment in the first-filed Frost Bank action, and as the patent-holder filing first, his choice of forum  is "entitled to respect."[40] Mr. Grecia alternatively argues if Early Warning's action here is considered the first-filed, we should not apply the first-

filed rule because Early Warning's action is "anticipatory" making it an exception to the first-filed rule. Early Warning responds the first-to-file rule does not apply because its declaratory judgment action lacks "complete or near complete" overlap with the Frost Bank action, and the issues in the declaratory judgment case before us are broader.[41] Early Warning also argues if we find the Frost Bank suit to be first-filed, the customer suit exception or the exception for improper forum shopping applies.[42]

We conclude the first-to-file rule applies. We need not address Mr. Grecia's anticipatory filing argument. But we must deny Mr. Grecia's Motion based on the customer suit exception. Because we find the customer suit exception applies, we do not address Early Warning's argument Mr. Grecia engaged in improper forum shopping.

### 1.     We apply the first-to-file rule based on the Frost Bank suit.

The first-to-file rule offers guidance when "[t]he party who first brings a controversy into a court of competent jurisdiction for adjudication should, so far as our dual system permits, be free from the vexation of subsequent litigation over the same subject matter."[43] "[W]here there are parallel proceedings in different federal courts, the first court in which jurisdiction attaches has priority to consider the case."[44] The rule is meant to encourage "sound judicial administration and promote[] comity among federal courts of equal rank."[45] "[T]he forum of the first-filed case is favored unless fairness or efficiency considerations require otherwise."[46] An "ample degree of discretion, appropriate for disciplined and experienced judges, must be left to the [district court]" in deciding whether the first-to-file rule applies.[47]

To determine whether the first-to-file rule applies, we apply the substantive law of patents guided by the Court of Appeals for the Federal Circuit. We also follow its guidance on procedural matters affecting "national uniformity in patent practice."[48] The Court of Appeals for the Federal

Circuit in *In re Telebrands Corp.* instructs the first-to-file rule "stands for the common sense proposition that, when two cases are the same or very similar, efficiency concerns dictate that only one court decide both cases."[49] The Federal Circuit distinguishes two scenarios where the district court may apply the first-to-file rule:"[w]here the overlap is complete or nearly complete, the usual rule is for the court of first jurisdiction to resolve the issues. But where there is less overlap, the second district court has considerably more discretion."[50] It directs "judgment is made case by case, based on such factors as the extent of overlap, the likelihood of conflict, the comparative advantage and the interest of each forum in resolving the dispute."[51]

Because Early Warning's claims before us arise in the patent infringement and invalidity of the '555 patent, the issue becomes whether the subject of the dispute—the patent and the patent-infringing product—are the same in the Frost Bank suit and in this case.

We addressed the applicability of the first-to-file rule three weeks ago in another case involving Mr. Grecia, *Samsung Electronics America, Inc. et al. v. Grecia.*[52] In *Samsung*, we found the first-to-file rule did not apply because the first-filed suit and Samsung's declaratory judgment action did not involve the same infringing product.[53] We today face a different issue presented by Mr. Grecia. He first sued Frost Bank, a customer of Early Warning, for its alleged infringement of the '555 patent and seeks a judgment Frost Bank directly infringes claim 16 of the '555 patent through the use of the Zelle® computer product.[54] The alleged infringing product in this suit is the Zelle® network, made and sold by Early Warning.

We disagree with Early Warning's argument there is no "substantial overlap" between this case and the Frost Bank suit. Mr. Grecia claims Frost Bank uses the Zelle® computer product in its service to customers which allows them to make and receive payments digitally.[55] He attaches a claim chart as an exhibit to his Frost Bank suit complaint including a description of the allegedly

infringing product, the Zelle® computer product.[56] The claim chart also identifies Early Warning as the maker and seller of the Zelle® network royalty scheme.[57] Early Warning agreed to defend and indemnify Frost Bank in the Frost Bank suit.[58] Early Warning claims Mr. Grecia "may" in the future add Early Warning as a party to the Frost Bank suit but has not done so.[59]

Our case involves the same patent, the '555 patent, and the same infringing product—the Zelle® network.[60] Early Warning asks us to declare the '555 patent is invalid, the claims of the '555 patent are unenforceable, and Early Warning and its customers, including Frost Bank, do not infringe on the '555 patent through the use of the Zelle® network.[61] The alleged infringing product in the Frost Bank suit is the Zelle® computer product, and the alleged infringing product in this suit is the entirety of the Zelle® network, including the Zelle® computer product. Early Warning's declaratory judgment involves all remaining claims of the '555 patent.

Both suits involve the alleged infringement of the patent by the Zelle® network, or a component of the Zelle® network. Although the Frost Bank suit is limited to Frost Bank's use of the Zelle® computer product, the issues of infringement are common between these two cases and applying the first-to-file rule would achieve the rule's core purpose of avoiding wasteful, and potentially inconsistent, duplicative litigation. There are key differences between the circumstances in this suit and Samsung's declaratory action against Mr. Grecia. In *Samsung*, Mr. Grecia sued a retailer for its alleged infringement of the '555 patent and sought judgment the retailer directly infringed claim 2 of the '555 patent through the use of a device used, owned, and controlled by the retailer.[62] Mr. Grecia did not name Samsung or its entities in the suit against the retailer or allege Samsung had a role in the allegedly infringing act in the suit.[63] The only reference to Samsung made in the suit against the retailer is an unclear picture of Samsung's product in an attached claims chart to the complaint, which Mr. Grecia argued is an "implicit assertion" Samsung

also infringed the patent.[64] Mr. Grecia claimed the retailer's device only infringed claim 17 of the '555 patent, and Samsung's declaratory judgment involved all remaining twenty claims of the '555 patent at issue. Samsung conceded its product may be compatible with the retailer's device but it is not considered a "component."[65] We found the allegedly infringing products in Samsung's declaratory action and Mr. Grecia's suit against the retailer did not satisfy the subject-matter requirement of the first-to-file rule because the cases may be resolved without inconsistent or piecemeal results the first-to-file rule aims to prevent.[66]

Unlike in *Samsung*, the alleged infringing product is made and sold by Early Warning, not Frost Bank. Mr. Grecia's infringement claim against Frost Bank specifically alleges its use of the Zelle® computer product as the infringing act. The claim chart Mr. Grecia attached to the Frost Bank suit also identifies Early Warning as the manufacturer and distributor of the Zelle® product used by Frost Bank.[67] In *Samsung*, the only reference to the infringing product in the second suit is an unclear picture on a claim chart attached to the complaint. Early Warning in its declaratory judgment action also asks us to declare both Early Warning and its customers do not infringe the '555 patent using the Zelle® network and is indemnifying Frost Bank in the Frost Bank suit. Samsung is neither bringing the declaratory judgment action on behalf of the retailer nor has it agreed to defend or indemnify the retailer for a different product used and owned by the retailer.

Although Samsung conceded its product may be compatible with the retailer's device, it is not considered a "component," and other methods could be used to complete a transaction on the retailer's device. In this suit, Early Warning asks us to declare the entire Zelle® network does not infringe any claim of the '555 patent, and Mr. Grecia in the Frost Bank suit claims Frost Bank's use of a component of the Zelle® network, the Zelle® computer product, directly infringes on the '555 patent. Both suits cannot be resolved without the "embarrassing inconsistent results that the

first-to-file rule" is designed to prevent. For example, the court in the Frost Bank suit could find the Zelle® computer product infringes claim 16 of the '555 patent, and we could simultaneously find the entire Zelle® network does not infringe any claim of the '555 patent. The judgments would contradict each other and offend the "comity among federal courts of equal rank."[68] Although Early Warning argues the issues in this case are broader than those in the frost Bank suit, the issue of whether the Zelle® network infringes upon all claims of the '555 patent in this suit and whether Frost Bank's use of the Zelle® computer product infringes upon only claim 16 of the '555 patent cannot be resolved without the fear of piecemeal resolution.

The first-to-file rule applies because this suit and the Frost Bank suit involves the same subject matter. But we must consider whether the customer suit exception applies to the rule.

## 2.      The customer suit exception applies.

Early Warning argues if we find the first-to-file rule applies, the customer suit exception requires we proceed with this action.[69] Early Warning also argues we should not dismiss, stay, or transfer this case because Mr. Grecia engaged in improper forum shopping.[70] We find the customer suit exception applies because Early Warning cannot be joined in the Frost Bank suit and Frost Bank is equivalent to a "reseller" of the Zelle® network. Finding the customer suit exception applies, we do not address whether Mr. Grecia engaged in improper forum shopping.

"[T]he first-filed [action] is favored 'unless considerations of judicial and litigant economy, and the just and effective disposition of disputes, require otherwise."[71] "Exceptions to the first-filed rule are not rare and are made when justice or expediency requires, including when the first-filed action is the result of forum-shopping and if the balance of convenience favors the second forum." [72]This flexible standard is "motivated by equitable principles and practical considerations—'[d]istrict courts have always had discretion to retain jurisdiction given

appropriate circumstances justifying departure from the first-[to-file] rule.'"[73] "Courts in this Circuit have recognized several such exceptions, including when the second-filed action has developed further than the first, and when there is evidence of anticipatory filing, improper forum shopping, gamesmanship, or other bad faith by the first filer."[74] An exception to the first-to-file rule "must be justified by a 'sound reason that would make it unjust or inefficient to continue the first-filed action.'"[75] The party opposing application of the rule has the burden of showing an exception applies.[76]

Early Warning argues the customer suit exception to the first-to-file rule applies because the Frost Bank suit is brought in a District where it cannot be joined as a defendant.[77] Early Warning also argues preference should be given to a manufacturer's declaratory judgment suit over a patent holder's suit against the manufacturer's customers for their ordinary use of the manufacturer's products.[78] We agree.

The customer suit exception to the first-to-file rule provides when "litigation [is] against or brought by the manufacturer of infringing goods[, it] takes precedence over a suit by the patent owner against customers of the manufacturer."[79] The exception is "based on the manufacturer's presumed greater interest in defending its actions against charges of patent infringement; and to guard against possibility of abuse."[80] "[T]he guiding principles in the customer suit exception . . . are efficiency and judicial economy."[81] "[C]ourts apply the customer suit exception to stay earlier-filed litigation against a customer while a later-filed case involving the manufacturer proceeds in another forum."[82] "The manufacturer's case is preferred because the manufacturer is the 'true defendant.'"[83] But the customer suit exception is a narrow exception and applies in situations: (1) "when the first suit is brought against the customer in a district where the manufacturer cannot be joined as a defendant"[84] and (2) the first suit "is filed against a customer who is a mere reseller of

the accused goods, while the second suit is a declaratory action brought by the manufacturer of the accused goods."[85]

The first inquiry is whether Early Warning could be joined as a defendant in the Frost Bank suit. Early Warning argues, even though it is registered to do business in Texas, it cannot be joined as a defendant in the Frost Bank suit because it does not have a "regular and established place of business" in the Western District of Texas.[86] Mr. Grecia argues Early Warning has a place of business in Austin, Texas and attaches a document from the "OpenCorporates" website, a public website which is not a government or otherwise official website of which we may take judicial notice.[87] Early Warning attaches a declaration establishing it does not have a place of business in Austin, Texas, and the relevant government sources identify Early Warning's statutory agent is located in Dallas, Texas, outside of the Western District of Texas.[88] Mr. Grecia does not offer contrary evidence.

We agree with Early Warning a Texas district court is not a proper venue for claims against it. Congress defines venue in patent infringement suits providing "[a]ny civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business."[89] For domestic corporations, "residence" in Section 1400(b) refers only to the state of incorporation.[90] Because Early Warning is incorporated in Delaware, there is no dispute the residency requirement is not met. Early Warning also does not argue acts of infringement have not been committed in Western District of Texas. The only question we must decide is whether Early Warning has a "regular and established place of business" in the Western District of Texas within the meaning of Section 1400(b).

The Court of Appeals for the Federal Circuit sets three general requirements to determine if a defendant has a regular and established place of business in a particular district: "(1) there must be a physical place in the district; (2) it must be a regular and established place of business; and (3) it must be the place of the defendant."[91] The "place" must be a "physical, geographical location in the district from which the business of the defendant is carried out."[92] The place of business must also be "regular," meaning "steady, uniform, orderly, … methodical," and "established," meaning "settled certainly, or fixed permanently."[93] It must be "the place of the defendant," which the defendant has "establish[ed] or ratif[ied]," and not just "solely a place of the defendant's employee."[94] Relevant considerations provided by the Court of Appeals for the Federal Circuit include: "whether the defendant owns or leases the place, or exercises other attributes of possession or control over the place," and whether "the defendant conditioned employment on an employee's continued residence in the district or the storing of materials at a place in the district so that they can be distributed or sold from that place."[95] The Court of Appeals for the Federal Circuit held "[t]he statute clearly requires that venue be laid where 'the defendant has a regular and established place of business,' not where the defendant's employee owns a home in which he carries on some of the work that he does for the defendant."[96] The Court of Appeals for the Federal Circuit did not address whether the presence of a defendant's customer in a particular district could satisfy Section 1400(b)'s "regular and established place of business" requirement, nor have we found a case holding so.

Early Warning contends it does not have a "regular and established place of business" in the Western District of Texas. Patrick Bliss, the Vice President of Procurement of Early Warning, swears it is incorporated in Delaware, its  principal place of business is in Scottsdale, Arizona, and it has no physical place of business in Texas.[97] Vice President Bliss also swears Early Warning

does not lease, own, occupy, or control real property in Texas and does not hold itself out as being located in Texas.[98] Early Warning concedes it may have remote employees in Texas, but it does not condition their employment upon being located in Texas.[99] Even so, the Court of Appeals for the Federal Circuit held in *Cray* the regular and established place of business must be the "place of the defendant, not solely a place of the defendant's employee."[100]

Early Warning's only other tie to the Western District of Texas is the presence of customers, including Frost Bank. But we have found no authority, and Mr. Grecia offers none, holding the presence of a defendant's customers in a particular district could establish venue under Section 1400(b), nor does it logically follow given presence of a defendant's employees in a district does not meet the requirements of the statute. Because Early Warning does not have a "regular and established place of business" in the Western District of Texas within the meaning of Section 1400(b), we find it could not be joined in the Frost Bank suit.

Mr. Grecia fails to offer contrary evidence.

We must also consider whether Frost Bank is a "mere reseller" of the accused goods produced by Early Warning. In *Lighthouse Consulting Group, LLC v. Truist Bank*, a patent holder sued two banks alleging the mobile check depositing software the banks used infringed its patents.[101] The banks each exclusively used the same mobile check depositing software created and licensed by a manufacturer.[102] After the patent holder sued the banks, the manufacturer filed a declaratory judgment action against the patent holder seeking a declaration the patents are invalid and the software does not infringe the patents.[103] The banks moved to stay the patent holder's suit against them based on the customer suit exception.[104] Judge Gilstrap found the banks are equivalent to "resellers" because they did not develop or create the technology at issue in the case, and merely licensed the technology from the manufacturer, a non-party to the case.[105] Judge

Gilstrap also noted the manufacturer is the only supplier of this technology used by the banks.[106] Finding the manufacturer the "true defendant" in the dispute, Judge Gilstrap applied the customer suit exception.[107]

Similar to *Lighthouse Consulting*, Mr. Grecia in the Frost Bank suit alleges Frost Bank's use of the Zelle® computer product, exclusively made and distributed by Early Warning, infringes the '555 patent.[108] Mr. Grecia alleges "Frost Bank offers its customers—individuals and businesses holding accounts with Frost Bank—a way to make and receive payments digitally. This is the Zelle computer program product that includes code that facilitates monitoring access to the Frost Bank account holder's money."[109] Mr. Grecia does not identify any other supplier, product, or act by Frost Bank which infringes the patent. Nor does he claim Frost Bank develops or creates the technology at issue. We find Frost bank is equivalent to a "reseller" of the Zelle® computer product, and the "true defendant" in the suit is Early Warning, which makes and distributes the alleged infringing product.

Because Early Warning cannot be joined as a defendant in the Frost Bank suit and Frost Bank is a "mere reseller" of the Zelle® product, the customer suit exception to the first-to-file rule applies. We will not dismiss or transfer based on the first-to-file rule.

### B.    Mr. Grecia offers no basis to dismiss under Rule 13.

Mr. Grecia alternatively argues Early Warning's declaratory judgment action is a compulsory counterclaim barred by Federal Rule of Civil Procedure 13(a). He does not explain how or why Early Warning must bring its declaratory judgment as a compulsory counterclaim in the Frost Bank action pending in the Western District of Texas where Early Warning is not a party. We assume he bases his argument on Early Warning's indemnification of Frost Bank in the Texas action.

Under Rule 13(a) "[a] pleading must state as a counterclaim any claim that—at the time of its service—the pleader has against an opposing party if the claim: (A) arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; and (B) does not require adding another party over whom the court cannot acquire jurisdiction."[110] "Federal Rule of Civil Procedure 13(a) requires a party to assert as a counterclaim any cause of action that is available against the opposing party that 'arises out of the transaction or occurrence that is the subject matter of the opposing party's claim.'"[111] "The failure to plead a compulsory counterclaim bars a later independent action on that claim."[112]

The inquiry to determine if a claim is compulsory under Rule 13(a) is "whether the counterclaim 'bears a logical relationship to an opposing party's claim.'"[113] "The concept of a 'logical relationship' has been viewed liberally to promote judicial economy" and "exists where separate trials on each of the claims would 'involve a substantial duplication of effort and time by the parties and the courts.'"[114] "Such a duplication is likely to occur when claims involve the same factual issues, the same factual and legal issues, or are offshoots of the same basic controversy between the parties."[115] We are directed by our Court of Appeals to construe the term "transaction or occurrence" "generously" to further Rule 13(a)'s objective to promote judicial economy.[116]

Like the term "transaction or occurrence," the term "opposing party" is also broadly interpreted.[117] "[A] party not named in litigation may still be an opposing party for Rule 13 purposes in certain cases in which the party is functionally identical to the actual opposing party named in the litigation."[118] Where parties are "functionally equivalent . . . where an unnamed party controlled the litigation," or where "an unnamed party was the alter ego of the named party, they should be treated as opposing parties within the meaning of Rule 13."[119]

Mr. Grecia does not argue Early Warning and Frost Bank are "functionally identical" either through Early Warning's control of the Western District of Texas litigation or on an alter ego theory. The cases he cites to support his argument are inapposite; all involved a named party's failure to file a compulsory counterclaim.[120]

Mr. Grecia simply assumes Early Warning and Frost Bank are "functionally identical." He does not allege Early Warning is the alter ego of Frost Bank. We assume he bases his "functionally identical" argument on Early Warning's indemnification and defense of Frost Bank in the Texas action. But the evidence of record confirms Early Warning did not engage the Baker Botts firm in connection with Mr. Grecia's patent infringement allegations; Early Warning did not retain Baker Botts to defend Frost Bank in the Western District of Texas action; Baker Botts is Frost Bank's separate counsel; and Early Warning did not agree to defend and indemnify Frost Bank until February 22, 2021.

Mr. Grecia bears the burden of showing a basis for dismissal on his motion.[121] He fails to cite, and we have not found, a case from any district court finding a non-party manufacturer indemnifying its customer in a patent case to be "functionally identical" for purposes of Rule 13. Early Warning distinguishes the *Transamerica Occidental* case from our Court of Appeals where two insurance companies sued Transamerica Occidental in a Texas court. Transamerica Occidental then sued in a New Jersey court International Insurance Company, the successor in interest through an assignment of rights from the two insurance companies in the Texas case.[122] The New Jersey court dismissed Transamerica Occidental's action as barred as a compulsory counterclaim under Rule 13(a) in the Texas action. Transamerica Occidental appealed, arguing the International Insurance Company is not a "named opposing party" in the Texas action.[123]

Our Court of Appeals affirmed the New Jersey district court, finding International Insurance Company "the equivalent of an opposing party" for purposes of Rule 13(a) where it took an assignment of rights, and became the successor in interest, from the original plaintiffs in the first-filed action.[124] Our Court of Appeals focused on the "nature of the relationship" between International Insurance Company and the two plaintiff insurance companies in the first-filed Texas action.[125] Our Court of Appeals found "by virtue of the assignment, the rights that are at stake in the [first-filed] Texas litigation are actually [International Insurance Company's] rights, not [the two plaintiff insurance companies in the first-filed Texas action], and this is the reason why [International Insurance Company] is conducting the litigation in the Texas action."[126]

Early Warning distinguishes itself from the International Insurance Company in *Transamerica Occidental* because, although it agreed to defend and indemnify Frost Bank in the Texas action, it "is not asserting Frost Bank's claims in this action as subrogee. Rather, [it] is seeking to vindicate its own rights and has brought its own separate claims."[127]

We agree with Early Warning. There is nothing in the record to demonstrate Early Warning and Frost Bank are "functionally identical." Early Warning is asserting its own rights as the owner of the Zelle® network in its declaratory action here. Mr. Grecia bears the burden as the movant seeking dismissal. He fails to do so.

## III.   Conclusion

We deny Mr. Grecia's motion to dismiss. The customer suit exception applies to overcome the preference to defer under the first-filed rule. He also fails to adduce a basis to dismiss based on a compulsory counterclaim argument.

---

[1] ECF Doc. No. 4 at 6 (using the pagination assigned by the CM/ECF docketing system).

[2] *Id.*

---

[3] *Id.*

[4] ECF Doc. No. 1 ¶¶ 57, 59.

[5] *Id.* ¶ 6.

[6] *Id.*

[7] *Id.*

[8] *Id; Grecia v. Bank of N.YY. Mellon Corp.*, 19-02810 (S.D.N.Y. Apr. 20, 2020), Dkt. 55.

[9] ECF Doc. No. 1 ¶¶ 60–63; *Grecia v. Samsung Elecs. Am., Inc.*, No. 16-9691 (S.D.N.Y. Sept. 7 and 22, 2018), Dkts. 58, 60; *Grecia v. Samsung Elecs. Am., Inc.*, No. 19-1019 (Fed. Cir. Aug. 20, 2019), Dkt. 21; *Mastercard Int'l Inc. v. Grecia*, 2017-791 (P.T.A.B. Sept. 27, 2017), Paper 13.

[10] ECF Doc. No. 1 ¶ 11.

[11] *Id.* ¶ 10.

[12] ECF Doc. No. 4-6 ¶ 12.

[13] ECF Doc. No. 1 ¶ 11.

[14] *Id.* ¶ 16; *id.* at 41–42.

[15] *Id.* ¶ 17.

[16] *Id.*

[17] *Id.* ¶ 18 (internal quotation marks omitted); *Id.* at 41.

[18] *Id.* ¶ 19; *Grecia v. Cullen/Frost Bankers, Inc*., No. 21-16 (W.D. Tex. Jan 8, 2021).

[19] ECF Doc. No. 4-6 ¶ 12.

[20] *Id.*

[21] *Id.* ¶¶ 14, 17, 21.

[22] ECF Doc. No. 4-6.

[23] *Id.* at 8–13.

[24] *Id.* at 9.

[25] ECF Doc. No. 1 ¶ 20.

[26] ECF Doc. No. 14-2.

[27] *Id.* ¶¶ 4–7.

[28] *Id.* ¶ 8.

[29] *Id.* ¶¶ 9, 10.

[30] *Id.* ¶ 11.

[31] ECF Doc. No. 4 at 6 (using the pagination assigned by the CM/ECF docketing system).

[32] *Id.* at 7; *Cullen/Frost Bankers, Inc.*, No. 21-16.

[33] ECF Doc. No. 1.

[34] *Id.* ¶ 64.

[35] *Id.* ¶¶ 75, 76.

[36] ECF Doc. No. 1 ¶¶ 81, 89, 94, 101, 107.

[37] ECF Doc. No. 4 at 10; ECF Doc. No. 1 ¶ 20. When considering a motion to dismiss, "[w]e accept as true all allegations in the plaintiff's complaint as well as all reasonable inferences that can be drawn from them, and we construe them in a light most favorable to the non-movant." *Tatis v. Allied Interstate, LLC*, 882 F.3d 422, 426 (3d Cir. 2018) (internal quotation marks omitted) (quoting *Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010)). To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Our Court of Appeals requires us to apply a three-step analysis under a 12(b)(6) motion: (1) "it must 'tak[e] note of the elements [the] plaintiff must plead to state a claim'"; (2) "it should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth'"; and (3) "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (alterations in original) (third internal quotation marks omitted) (quoting *Iqbal*, 556 U.S. at 675, 679).

[38] ECF Doc. No. 4 at 13–14 (using the pagination assigned by the CM/ECF docketing system).

[39] *Id.* at 14–15 (quoting Fed. R. Civ. P. 13(a)).

[40] ECF Doc. No. 4 at 12 (using the pagination assigned by the CM/ECF docketing system).

[41] ECF Doc. No. 14 at 10–16 (using the pagination assigned by the CM/ECF docketing system).

[42] *Id.* at 16–17.

---

[43] *Crosley Corp. v. Hazeltine Corp.*, 122 F.2d 925, 930 (3d Cir. 1941).

[44] *FMC Corp. v. AMVAC Chem. Corp.*, 379 F. Supp. 2d 733, 737 (E.D. Pa. 2005).

[45] *Id.* at 738 (quoting *Equal Emp't Opportunity Comm'n v. Univ. of Pa.*, 850 F.2d 969, 971–72 (3d Cir. 1988), *aff'd on other grounds*, 493 U.S. 182 (1990)).

[46] *Shire U.S., Inc. v. Johnson Matthey, Inc.*, 543 F. Supp. 2d 404, 407 (E.D. Pa. 2008).

[47] *Merial Ltd. v. Cipla Ltd.*, 681 F.3d 1283, 1299 (Fed. Cir. 2012) (quoting *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 183–84 (1952)).

[48] *Shire,* 543 F. Supp. 2d at 408 (internal quotation marks omitted) (quoting *Genentech, Inc. v. Eli Lilly & Co.,* 998 F.2d 931, 937 (Fed. Cir.1993), *overruled on other grounds by Wilton v. Seven Falls Co.,* 515 U.S. 277 (1995)).

[49] 773 F. App'x 600, 602 (Fed. Cir. 2016) (citing *Save Power Ltd. v. Syntek Fin. Corp.*, 121 F.3d 947, 950 (5th Cir. 1997)).

[50] *Id.* (citing *W. Gulf Mar. Ass'n v. ILA Deep Sea Local 24*, 751 F.2d 721, 730 (5th Cir. 1985)).

[51] *Id.* (internal quotation marks omitted) (quoting *Save Power*, 121 F.3d at 951).

[52] No. 21-562, 2021 WL 978957, at *16 (E.D. Pa. Mar. 15, 2021).

[53] *Id.* at *10.

[54] ECF Doc. No. 4-6 ¶ 9.

[55] *Id.* ¶ 12.

[56] *Id.* at 8–13 (using the pagination assigned by the CM/ECF docketing system).

[57] *Id.* at 9.

[58] ECF Doc. No. 1 ¶ 20.

[59] *Id.* ¶ 21.

[60] *Id.* ¶¶ 71–72.

[61] *Id.* ¶¶ 75, 76.

[62] *Samsung Elecs. Am., Inc.*, 2021 WL 978957, at *3.

[63] *Id.* at *10.

[64] *Id.*

[65] *Id.*

[66] *Id.* at *16.

[67] ECF Doc. No. 4-6 at 9 (using the pagination assigned by the CM/ECF docketing system).

[68] *FMC Corp.,* 379 F. Supp. 2d at 738 (quoting *Equal Emp't Opportunity Comm'n.*, 850 F.2d at 971–72).

[69] ECF Doc. No. 14 at 17.

[70] *Id.* at 17–18.

[71] *Genentech*, 998 F.2d at 937.

[72] *FMC Corp.*, 379 F. Supp. 3d at 744 (quoting *Drugstore-Direct, Inc. v. Cartier Div. of Richemont N. Am., Inc.*, 350 F. Supp. 2d 620, 623 (E.D. Pa. 2004)).

[73] *Monzo v. Bazos*, 313 F. Supp. 626, 631 (E.D. Pa. 2017) (first alteration in original) (quoting *Equal Employment Opportunity Comm'n*, 850 F.2d at 972).

[74] *Id.* (citing *Equal Emp't Opportunity Comm'n*, 850 F.2d at 976–77).

[75] *Shire*, 543 F. Supp. 2d at 408 (quoting *Genentech*, 998 F.2d at 937–38).

[76] *Se. Power Grp., Inc. v. SAP Am., Inc.*, No. 20-398, 2020 WL 4805352, at *3 (E.D. Pa. Aug. 18, 2020) (citing *D & L Distrib., LLC v. Aqxplore Intern, LLC*, 959 F. Supp. 2d 757, 766 (E.D. Pa. 2013)).

[77] ECF Doc. No. 14 at 17 (using the pagination assigned by the CM/ECF docketing system).

[78] ECF Doc. No. 14 at 16 (citing *Katz v. Lear Siegler, Inc*., 909 F.2d 1459, 1464 (Fed. Cir. 1990).

[79] *Katz*, 909 F.2d 1459, 1464 (Fed. Cir. 1990).

[80] *Kahn v. Gen. Motors Corp*., 889 F.2d 1078, 1081 (Fed. Cir. 1989) (citing *Codex Corp. v. Milgo Elec. Corp.*, 553 F.2d 735, 737–38 (1st Cir. 1977), *cert. denied*, 434 U.S. 860 (1977)).

[81] *Tegic Commc'ns Corp. v. Board of Regents of Univ. of Tex. Sys.*, 458 F.3d 1335, 1343 (Fed. Cir. 2006).

[82] *Spread Spectrum Screening LLC v. Eastman Kodak Co*., 657 F.3d 1349, 157 (Fed. Cir. 2011).

[83] *Pragmatus Telecom, LLC v. Advanced Store Co., Inc.*, No. 12-88, 2012 WL 2803695, at *3 (D. Del. July 10, 2012) (quoting *Katz*, 909 F.2d at 1464).

[84] *Teleconference Sys. v. Proctor & Gamble Pharm., Inc*., 676 F. Supp. 2d 321, 327 (D. Del. 2009) (citing *C-O-Two Fire Equip. Co*., 342 U.S. at 186).

[85] *Id.* (citing *Air Products & Chems. Inc. v. MG Nitrogen Servs., Inc.*, 133 F. Supp. 2d 354, 357 (D. Del. 2001)).

[86] ECF Doc. No. 14 at 12.

[87] ECF Doc. No. 4-4. A district court "may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *United States v. Den Van. Nguyen*, No. 11-104-3, 2019 WL 6733006, at *1 n.1 (E.D. Pa. July 12, 2019) (quoting Fed. R. Evid. 201(b)). Our Court of Appeals has held it is improper for the district court to take judicial notice of facts found on a non-government run website because "[a]nyone may purchase an internet address" and "without proceeding to discovery or some other means of authentication" it is premature to assume the contents of a webpage are accurate. *Victaulic Co. v. Tieman*, 499 F.3d 227, 236 (3d Cir. 2007), *as amended* (Nov. 20, 2007).

[88] ECF Doc. No. 14

[89] *In re Cray Inc.*, 871 F.3d 1355, 1360 (Fed. Cir. 2017) (quoting 28 U.S.C. § 1400(b) (2018)).

[90] *TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 137 S. Ct. 1514 (2017).

[91] *In re Cray*, 871 F.3d at 1360.

[92] *Id.* at 1362.

[93] *Id.* at 1362–63.

[94] *Id.* at 1363 (first internal quotation marks omitted).

[95] *Id.*

[96] *Id.* at 1365 (internal quotation marks omitted) (quoting *Am. Cyanamid v. Nopco Chem. Co.*, 388 F.2d 818, 820 (4th Cir. 1968)).

[97] ECF Doc. No. 14-1 ¶¶ 1, 3, 4.

[98] *Id.* ¶¶ 4–5.

[99] *Id.* ¶¶ 6–7.

[100] *Cray*, 871 F.3d at 1363; *see also In re Google LLC*, 949 F.3d 1338 (Fed. Cir. 2020).

[101] No. 19-340, 2020 WL 6781977, at *1 (E.D. Tex. Apr. 7, 2020).

[102] *Id.*

[103] *Id.*

[104] *Id.*

[105] *Id.* at *2.

[106] *Id.*

[107] *Id.* (citing *In re Nintendo of Am., Inc.*, 756 F.3d 1363, 1365 (Fed Cir. 2014)).

[108] ECF Doc. No. 4-6 ¶ 9.

[109] *Id.* ¶ 12.

[110] Fed. R. Civ. P. 13(a)(1).

[111] *M.R. v. Ridley Sch. Dist.*, 744 F.3d 112, 121 (3d Cir. 2014).

[112] *Id.*(first citing *Baker v. Gold Seal Liquors, Inc.*, 417 U.S. 467, 469 n.1 (1974); then citing *N.Y. Life Ins. Co. v. Deshotel*, 142 F.3d 873, 882 (5th Cir.1998); and then citing 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* §1417, at 147 (3d ed. 2010)).

[113] *Id.* (quoting *Transamerica Occidental Life Ins. Co. v. Aviation Office of Am., Inc.*, 292 F.3d 384, 389 (3d Cir. 2002)).

[114] *Transamerica Occidental Life Ins. Co.*, 292 F.3d at 389–90 (quoting *Xerox Corp. v. SCM Corp.*, 576 F.2d 1057, 1059 (3d Cir. 1978)).

[115] *Id.* at 390.

[116] *Id.* (first internal quotation marks omitted).

[117] *Id.* at 391.

[118] *Id.* at 390.

[119] *Id.* at 391.

[120] *See Ruckus Wireless, Inc. v. Harris Corp.*, No. 11–01944, 2012 WL 588792 (N.D. Cal. Feb. 22, 2012); *Mitchell v. CB Richard Ellis Long Term Disability Plan*, 611 F.3d 1192 (9th Cir. 2010); *Genentech*, 998 F.2d 931.

[121] *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005).

[122] *Transamerica Occidental*, 292 F.3d at 386.

[123] *Id.* at 388.

[124] *Id.* at 391–92.

[125] *Id.*at 391.

[126] *Id.* at 392.

[127] ECF Doc. No. 14 at 20 (using the pagination assigned by the CM/ECF docketing system).