# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **EARLY WARNING SERVICES, LLC** | : | **CIVIL ACTION** |
| | : | |
| v. | : | NO. 21-1050 |
| | : | |
| **WILLIAM GRECIA** | : | |

## MEMORANDUM

**KEARNEY, J.**                                                                                                                                     **May 27, 2021**

      A patent holder settled a case against a bank allegedly using his patent by providing the bank and its customers a license to use his patent in exchange for payment and a release. Two years later, the patent holder began threatening the company developing the software programs used by the bank (and many other banks) with lawsuits against yet other banks. Essentially repeating what he did two years earlier to garner the payment and license agreement. The software developer did not settle; it instead sued the patent holder asking us to invalidate his patent and find its software used by many banks does not infringe the patent. The patent holder counterclaimed the software developer is breaching the settlement agreement with the bank two years earlier. The software developer now moves to dismiss the counterclaim arguing it never released the patent holder and is not bound by a settlement agreement signed by the patent holder and the bank. We analyzed the specific language agreed to by the patent holder and the bank in their settlement agreement. The patent holder agreed to not include the software developer in the earlier settlement even though he knew of it and referenced it in other terms. He instead granted the bank a license to use his patent and specifically excluded the software developer from the bank's release to him. Applying bedrock contract interpretation, we grant the software developer's motion to dismiss the patent holder's counterclaim because it never agreed to release the alleged patent holder.

I.  **Facts alleged in counterclaim and public record.**

Software developer Early Warning Services, LLC owns the Zelle® network, a financial services network focused on transforming digital payment experiences.[1] Early Warning's customers include banks using the Zelle® network to offer their customers more flexible funds transfer services.[2]

*Mr. Grecia targets and resolves claims against Early Warning customer JPMorgan.*

Pennsylvanian William Grecia owns United States Patent 8,404,555 ("'555 patent"), titled "Personalized digital media access system (PDMAS)."[3] The '555 patent relates to the field of digital access management schemes used by makers of electronic products to protect sensitive data from illegal access using computerized devices.[4] He also owns United States Patent Numbers 8,533,860 ("'860 patent") and 8,887,308 ("'308 patent"), which share similar specifications and subject matter.[5]

Mr. Grecia sued JPMorgan & Chase Co. in 2018 for infringing his '308, '860, '555 patents by using Early Warning's Zelle network.[6] JPMorgan and Mr. Grecia negotiated terms for a settlement. Mr. Grecia now alleges he thought he was negotiating with JPMorgan and Early Warning "jointly."[7] He cites an August 9, 2018 email where his lawyer tells JPMorgan's lawyer "Mr. Grecia asked me to please forward the attached onto you to share with Chase, Early Warning, or both, for their information. Thanks."[8] There is no allegation of a response from Early Warning. There is no allegation of Early Warning playing a speaking role whatsoever in the case with JPMorgan or in resolving the case.

Mr. Grecia and JPMorgan signed a Non-Exclusive Patent License and Settlement Agreement (the "Settlement Agreement") on December 7, 2018.[9] No one from Early Warning or any other entity signed the Settlement Agreement. JPMorgan paid Mr. Grecia, and in exchange,

Mr. Grecia: (1) granted JPMorgan a license to use his patents; (2) provided a "covenant not to sue" JPMorgan or any "Licensed User" among others; and (3) released JPMorgan and its Licensed Users among others from any and all claims Mr. Grecia had arising out of the litigation, the Licensed Products, and the Licensed Patent.[10]

In exchange for Mr. Grecia's dismissal, JPMorgan both paid Mr. Grecia and released him from claims "on behalf of itself, its Affiliates, its successors, estate, heirs, and assigns, and those in privity with any one of the foregoing."[11] JPMorgan released Mr. Grecia from lawsuits including those arising after the later discovery of new and/or additional facts arising out of, based upon, attributable to, or in connection with the Licensed Patents and/or the Litigation, occurring on or before the Effective Date of the Settlement Agreement.[12] Mr. Grecia and JPMorgan negotiated the Settlement Agreement. They agreed the term "Affiliate" in JPMorgan's Release did not include Early Warning as granting a release. They specifically agreed: "Early Warning Services, LLC ('EWS') is not an Affiliate of [JPMorgan]."[13]

But they also agreed the "Licensed User(s)" who could use Mr. Grecia's patent would include Early Warning to the extent of transactions originating from, terminating with, or otherwise between or with JP Morgan and/or its Affiliates or a direct or indirect customer of them.[14]

### Mr. Grecia sends a demand to Early Warning.

Mr. Grecia sent a demand letter to Early Warning's counsel approximately two years after he signed the Settlement Agreement.[15] Mr. Grecia claimed enforceable rights under the '555 patent against Early Warning's customers First National Bank of Central Texas, Frost Bank, American Bank, and First National Bank of Texas of infringing his patent.[16] Mr. Grecia advised Early Warning, as an indemnitor of its customers, to "move wisely" to "buy out" his

3

threats for an "early discounted amount" before he filed cases against the four customers after January 5, 2021.[17] He threatened to demand large sums of money after filing suits in the Western District of Texas which he presumably believed would create more fear of large verdicts in Early Warning's boardroom.[18] Mr. Grecia attached four claim charts to his demand purporting to identify the customers' alleged infringement of at least claim 2 of the '555 patent.[19] He threatened further enforcement efforts and would "not consider any bulk or global" deals concerning the Zelle® network "at all in 2021.

Early Warning sued Mr. Grecia in his home District here asking we invalidate all twenty-six claims in Mr. Grecia's '555 patent and declare Early Warning's product is non-infringing. Mr. Grecia counterclaimed arguing Early Warning is breaching the Settlement Agreement and the implied covenant of good faith and fair dealing by suing him. [20]

## II. Analysis

Early Warning now moves to dismiss the counterclaims.[21] It argues: Early Warning is not a party to the Settlement Agreement and cannot be bound by its terms; Mr. Grecia agreed JPMorgan's release did not cover claims by Early Warning against Mr. Grecia; and Mr. Grecia agreed JPMorgan's release only covered claims existing on or before December 7, 2018. While we find we cannot determine whether the Settlement Agreement binds Early Warning as a non-party, we find the four corners of the Settlement Agreement confirm the parties did not intend to release Early Warning's claims against Mr. Grecia. Mr. Grecia does not offer a basis to find ambiguity in the four corners of his Settlement Agreement negotiated by JPMorgan and his lawyers in December 2018. We need not reach the question of whether Early Warning's claims arose on or before December 7, 2018. Early Warning did not release Mr. Grecia. It may proceed on this lawsuit. We must dismiss Mr. Grecia breach of Settlement Agreement theories.

### 1. We cannot determine as a matter of law Early Warning cannot be bound by the Settlement Agreement.

Early Warning argues it cannot be held liable for breach of the Settlement Agreement because it was not a party to the Settlement Agreement. All agree Early Warning did not sign the Settlement Agreement. But we cannot determine as a matter of law whether Early Warning is bound by the Settlement Agreement because Mr. Grecia alleges facts which could allow us to plausibly infer Early Warning may have participated in the negotiations for the Settlement Agreement. The parties twice identify Early Warning and Mr. Grecia cites his lawyer's email asking to share information with Early Warning. This is the thinnest of allegations but would suffice to allow us to infer some negotiation role by Early Warning.

Under New York Law,[22] "it is axiomatic that '[a] contract cannot bind a non-party unless the contract was signed by the party's agent, the contract was assigned to the party, or the signatory is in fact the 'alter ego' of the party.'"[23] "Even where an 'agreement purport[s] to bind successors and assigns of the parties to the agreement, an assignee or successor will not be bound to the terms of the contract absent an affirmative assumption of the duties under the contract.'"[24] "An exception to this rule exists, however, where a non-party 'manifests an intent to be bound by the contract.'"[25] A non-party's assent to be bound is "inferable from the [non-party's] participation in the negotiation of the contract" or if the non-party controls one of the parties to the contract."[26] These contract principles apply to settlement agreements.[27]

Early Warning did not sign the Settlement Agreement. Mr. Grecia does not allege facts showing JPMorgan is the "alter ego" of Early Warning, nor does he allege facts showing Early Warning is a successor or an assignee of the Settlement Agreement. But Mr. Grecia does allege he believed Early Warning and JP Morgan jointly negotiated with him. He offers no support for this allegation other than his lawyer's email asking JP Morgan's lawyer to forward Mr. Grecia's

offers to Early Warning.[28]  But Mr. Grecia is not required to adduce sufficient evidence to establish his counterclaims at this stage.  Rather he must allege facts, which, taken as true, support his counterclaims.

There is one other indicia of Early Warning's possible involvement.  JP Morgan and Mr. Grecia twice mention Early Warning in their Settlement Agreement.  They define "Licensed User" to <u>include</u> Early Warning to a limited extent and define "Affiliate" to <u>exclude</u> Early Warning.  As a "Licensed User," Early Warning benefits from Mr. Grecia's release and covenant not to sue.  As the parties included language referencing Early Warning's rights and obligations under the Settlement Agreement, it is plausible Early Warning had some role in the contract negotiations.  Mr. Grecia's allegation Early Warning took part in the contract negotiations coupled with the references to Early Warning in the Settlement Agreement bars us from finding, as a matter of law at the motion to dismiss stage, Early Warning cannot be bound by the terms of the Settlement Agreement.

**2.  Mr. Grecia agreed Early Warning did not release him from claims.**

Mr. Grecia claims Early Warning breached the Settlement Agreement by filing this suit because it released him.  But he agreed only JPMorgan released him on behalf of itself, "its Affiliates, its successors, estate, heirs and assigns," and "those in privity" with any of these groups.  Mr. Grecia argues Early Warning is "in privity" with JPMorgan binding it to the Release.  Early Warning disputes this characterization.

"The term privity does not have a technical and well-defined meaning."[29]  "Rather, 'it is an amorphous concept not easy of application.'"[30]  Black's Law Dictionary defines "privity" as "[t]he connection or relationship between two parties, each having a legally recognized interest in the same subject matter (such as a transaction, proceeding, or piece of property)" or

6

"mutuality of interest."[31]  In the *res judicata* context, privity "includes those who are successors to a property interest, those who control an action although not formal parties to it, those whose interests are represented by a party to the action, and possibly coparties to the prior action."[32]  But the Court of Appeals for the Second Circuit has distinguished "contractual privity" from "preclusion privity" and instructs us to apply "contractual privity" in the settlement context.[33]  In the settlement context, we must determine "if the parties to the settlement agreement in the first suit . . . *intended* to release' the non-party."[34]  "A release may not be read to cover matters which the parties did not intend to cover."[35]  "The straightforward rule is that a party releases only those other parties whom he intends to release."[36]

In *VKK Corp. v. National Football League*, the NFL obtained a release from the plaintiff discharging "the National Football League, its officers, directors, . . . employees, subsidiaries, affiliates, partners, predecessors, principals, heirs, executors, administrators, trustees, beneficiaries, agents, successors, and assigns, and each Member Club of the National Football League . . . their officers, directors . . . subsidiaries, affiliates, partners, predecessors, principals, heirs, executors, administrators, trustees, beneficiaries, agents, successors, and assigns . . . of any and all past or present or, if based, in whole or in part, on facts, actions, claims or matters existing or occurring from the beginning of the world to the date of this Release, future claims."[37]  Sometime after the NFL signed the release, a new member club joined.[38]  The plaintiff then sued the NFL and the new member club.[39]  The new member club moved to dismiss the claims against it, arguing the earlier release included it.[40]  The Court of Appeals for the Second Circuit found the release did not include the new member club.[41]

The court of appeals explained, "the Release does not say [plaintiffs] release clubs that are not members at the time the Release is signed but become members at the time future claims

are brought."⁴² The court of appeals further analyzed the plain meaning of the terms "successor" and "affiliate" and found the new member club met neither definition.⁴³ The court then reasoned, "[o]ur conclusion that the Release does not cover future member clubs such as [the new member club] is supported by the principle of *expressio unius est exclusio alterius*" – "to express or include one thing implies the exclusion of the other, or of the alternative."⁴⁴ It explained, "the NFL and its member clubs are sophisticated commercial actors who could have specifically referred to future member clubs had they intended to include them in the Release."⁴⁵

In *Korenblum v. Citigroup*, an employment agency placed temporary employees at Citigroup.⁴⁶ The employees first sued the agency under the Fair Labor Standards Act, and the employees settled the case.⁴⁷ The employees then sued Citigroup. Citigroup argued *res judicata* barred suit.⁴⁸ Judge Furman held *res judicata* did not bar the employees' claim.⁴⁹ Judge Furman explained, in the settlement context, "the usual principles of 'preclusion privity' do not apply" and courts must instead determine if the parties to the first suit "intended to release" the non-party.⁵⁰ He further explained, "the settlement agreement makes no reference to Citi[group] and includes nothing to suggest Plaintiffs intended to release both [the agency] and Citi[group]."⁵¹ In support, he pointed out the language of the agreement stated, "[employees] and [agency] mutually desire to settle fully and finally the Lawsuit and any and all claims and disputes between [employees] and [agency]."⁵²

We face a similar issue. The four corners of the Settlement Agreement confirm the parties did not intend for JPMorgan to release Mr. Grecia from claims by Early Warning. Like in *Korenblum*, we note the release did not include Early Warning; to the contrary, the parties agreed to exclude Early Warning from the release. Like in *VKK Corp.*, we are guided by the principle *expressio unius est exclusio alterus*, and we look to the terms the parties included as

well as the terms the parties chose to exclude. JPMorgan and Mr. Grecia agreed JPMorgan released Mr. Grecia "on behalf of itself, its Affiliates, its successors, estate heirs, and assigns, and those in privity with any one of the foregoing." Assuming JPMorgan could bind Early Warning (a fact of which we are not convinced) and intended to enter the release on behalf of Early Warning, the parties could have included "Licensed Users," a term the parties agreed would include Early Warning at least in some capacity, in the list of parties bound by the Release.[53] This is evident from the fact the license, the covenant not to sue, and Mr. Grecia's release all include Licensed Users among the groups affected by the provision. The only plausible reading of the Settlement Agreement is Mr. Grecia agreed to allow Early Warning to be a "Licensed User" for purposes of using his patents when working with JPMorgan's direct and indirect customers and Mr. Grecia released and promised not to sue Early Warning. But then he also agreed not to identify, and specifically exclude Early Warning as an Affiliate releasing him or to define Early Warning in privity with JPMorgan.

JPMorgan and Mr. Grecia alternatively could have explicitly listed Early Warning in the list of parties bound by the Release. Mr. Grecia agreed to specifically identify Early Warning twice in the Settlement Agreement. By including Affiliates, a term defined to exclude Early Warning, but not including "Licensed Users" or Early Warning expressly, the parties demonstrated their intent not to release Early Warning's claims against Mr. Grecia. Mr. Grecia does not plead JPMorgan released Early Warning's claims against Mr. Grecia.

### III. Conclusion

We dismiss Mr. Grecia's counterclaim.

9

[1] ECF Doc. No. 1 ¶10.

[2] *Id.*

[3] *Id.* at 21 ¶12.

[4] *Id.*

[5] ECF Doc. No. 21 ¶¶ 57, 59.

[6] Second Am. Compl., *Grecia v. JPMorgan Chase Bank, N.A.*, No. 18-3696, ECF Doc. No. 27 (S.D.N.Y. Sept. 14, 2018).

[7] ECF Doc. No. 21 at 11 ¶7.

[8] ECF Doc. No. 21-2 at 2.

[9] ECF Doc. No. 35 -1 at 2.

[10] *Id.*

[11] ECF Doc. No. 35-1 at 6-7.

[12] *Id.* at 6.

[13] *Id.* at 2-3.

[14] *Id.* at 4.

[15] ECF Doc. No. 1 ¶7.

[16] *Id.* ¶ 11.

[17] *Id.* ¶ 16; *id.* at 41–42.

[18] *Id.* ¶ 17.

[19] *Id.*

[20] *Id.* ¶ 18 (internal quotation marks omitted); *Id.* at 41.

[21] When considering a motion to dismiss "[w]e accept as true all allegations in the plaintiff's complaint as well as all reasonable inferences that can be drawn from them, and we construe them in a light most favorable to the non-movant." *Tatis v. Allied Interstate, LLC*, 882 F.3d 422, 426 (3d Cir. 2018) (quoting *Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010)). To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing *Twombly*, 550 U.S. at 556). Our Court of Appeals requires us to apply a three-step analysis under a 12(b)(6) motion: (1) "it must 'tak[e] note of the elements [the] plaintiff must plead to state a claim;'" (2) "it should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth;'" and, (3) "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 675, 679).

[22] The Settlement Agreement contains a "Governing Law and Consent to Jurisdiction" provision designating New York law as controlling. ECF Doc. No. 35-1 at 11.

[23] *Arcadia Biosciences, Inc. v. Vilmorin & Cie*, 356 F. Supp. 3d 379, 390 (S.D.N.Y. 2019) (quoting *Glob. Entm't, Inc. v. New York Tel. Co.*, No. 00 Civ. 2959 (SHS), 2000 WL 1672327, at *7 (S.D.N.Y. Nov. 6, 2000)).

[24] *Id.* (quoting *Amalgamated Transit Union Local 1181, AFL-CIO v. City of New York*, 846 N.Y.S.2d 336, 338 (N.Y. Sup. Ct. App. Div. 2nd Dep't 2007)).

[25] *Malsteen v. Universal Music Grp., Inc.*, 940 F. Supp. 2d 123, 136 (S.D.N.Y. 2013) (quoting *Travelers Cas. & Sur. Co. v. Dormitory Authority-State of N.Y.*, 735 F. Supp. 2d 42, 80 (S.D.N.Y. 2010).

[26] *Id.* (quoting *MBIA Ins. Corp. v. Royal Bank of Can.*, 706 F. Supp. 2d 380, 396 (S.D.N.Y. 2009).

[27] *Scott v. JPMorgan Chase & Co.*, 603 Fed. App'x 33, 35 (2d Cir. 2015) (finding JPMorgan could not be bound by a Settlement Agreement to which it was not a party).

[28] ECF Doc. No. 35 at 6.

[29] *Doe v. New York Univ.*, 786 N.Y.S.2d 892, 872 (N.Y. Sup. Ct. 2004).

[30] *Id.*

[31] Privity, Black's Law Dictionary (11th ed. 2019).

[32] *Id.*

[33] *See Boguslavsky v. S. Richmond Sec., Inc.*, 225 F.3d 127, 130 (2d Cir.2000).

[34] *Korenblum v. Citigroup, Inc.*, No. 15-3383, 2015 WL 6001275 (S.D.N.Y. Oct. 15, 2015) (emphasis in original).

[35] *Augello v. Koenig-Rifkin*, 56 A.D.3d 503, 504 (2nd Dep't 2008).

[36] *Boguslavsky*, 225 F. 3d at 130 (quoting *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 347 (1971)).

[37] *VKK Corp. v. Nat'l Football League*, 244 F.3d 114, 130 (2d Cir. 2001).

[38] *Id.*

[39] *Id.*

[40] *Id.*

[41] *Id.*

[42] *Id.*

[43] *Id.*

[44] *Id.*

[45] *Id.*

[46] *Korenblum*, 2015 WL 6001275 (S.D.N.Y. Oct. 14, 2015).

[47] *Id.* at *2.

[48] *Id.*

[49] *Id.*

[50] *Id.*

[51] *Id.* n.2.

[52] *Id.*

[53] It is not clear whether such a provision would be enforceable against Early Warning because, as discussed above, contracts generally cannot bind nonparties unless the nonparty manifests an intent to be bound by the contract. The term "Licensed Users" includes Early Warning, but JPMorgan and Mr. Grecia limited this definition "to the extent of transactions originating from, terminating with, or otherwise between or with JPMC and/or its Affiliates or a direct or indirect customer of JPMC and/or its Affiliates." Thus, even if the release included "Licensed Users," the release still might not bar Early Warning's claims against Mr. Grecia.